Citation Nr: 1554499 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 12-18 032 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Whether new and material evidence has been received to reopen the claim for entitlement to service connection for right foot pes planus.

2. Whether new and material evidence has been received to reopen the claim for entitlement to service connection for a right wrist disability.

3. Entitlement to service connection for a right wrist disability.

4. Entitlement to service connection for a right knee disability. 

5. Entitlement to an initial compensable rating for right foot hallux valgus. 

6. Entitlement to an initial rating higher than 10 percent for left foot pes planus and hallux valgus.



REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

T. S. Willie, Counsel 


INTRODUCTION

The Veteran served on active duty from October 1984 to October 1992. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

In a January 2015 decision, the issues of entitlement to service connection for right foot pes planus and entitlement to an initial compensable rating for right foot hallux valgus were remanded by the Board for further development. At that time, the Board also declined to reopen the claim of entitlement to service connection for a right wrist disability. The Veteran appealed the Board's decision that denied reopening the claim of entitlement to service connection for a right wrist disability to the Court of Appeals for Veterans Claims (Court). In a Joint Motion for Remand (JMR) the parties agreed to vacate the Board's January 2015 decision denying the request to reopen and remand the case to the Board for additional development. The JMR was incorporated by reference in a Court order dated in September 2015.

For reasons set forth in more detail below, the issue of service connection for pes planus of the right foot has been recharacterized as set forth in Issue 1 on the title page. The remanded issues have otherwise been returned to the Board.

The issue of entitlement to service connection for a right wrist disability is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Service connection for bilateral pes planus was last denied in a March 2009 rating decision. The evidence added to the record with regard to right foot pes planus since the March 2009 rating decision is cumulative or redundant and does not relate to an unestablished fact necessary to substantiate the claim.

2. Service connection for a right wrist disability was last denied in a March 2009 rating decision. The evidence added to the record with regard to the right wrist since the March 2009 rating decision is not cumulative or redundant and does relate to an unestablished fact necessary to substantiate the claim.

3. A right knee disability was not manifest in service, arthritis of the right knee was not manifest to a compensable degree within one year of separation from active duty, and a right knee disability is not otherwise attributable to active service. 

4. Right foot hallux valgus is manifested by degenerative changes of the right foot and painful motion. 

5. Left foot pes planus and hallux valgus is not manifested by severe pes planus nor is it manifested by objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, and characteristic callosities. 


CONCLUSIONS OF LAW

1. The March 2009 rating decision denying service connection for a bilateral foot disability to include pes planus disability is final. New and material evidence to reopen the claim for service connection for right foot pes planus has not been received. 38 U.S.C.A. §§ 5108, 7104 (West 2014); 38 C.F.R. §§ 3.156, 20.302, 20.1103 (2015).

2. The March 2009 rating decision denying service connection for a right wrist disability is final. New and material evidence to reopen the claim for service connection for a right wrist disability has been received. 38 U.S.C.A. §§ 5108, 7104; 38 C.F.R. §§ 3.156, 20.302, 20.1103.

3. A right knee disability was not incurred in or aggravated by service and arthritis may not be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309.

4. With resolution of reasonable doubt in the Veteran's favor, the criteria for an initial 10 percent rating for right foot hallux valgus have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 4.40 , 4.45, 4.59, 4.71a, Diagnostic Code 5280.

5. The criteria for an initial rating higher than 10 percent for left foot pes planus and hallux valgus have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 4.40 , 4.45, 4.59, 4.71a, Diagnostic Codes 5276, 5280.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VETERANS CLAIMS ASSISTANCE ACT OF 2000 (VCAA) 

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met with regard to the issues decided herein. There is no issue as to providing an appropriate application or the completeness of the application. By correspondence dated in September 2010 and June 2011, VA advised the Veteran of the information and evidence needed to substantiate the claims. The letters provided notice of what part of that evidence is to be provided by the claimant, and notice of what part VA will attempt to obtain. The Veteran was also provided information regarding the assignment of disability ratings and effective dates. 

VA has also satisfied its duty to assist. The claims folder contains service treatment records, VA medical records/VA examinations, and identified private medical records. No additional pertinent records are shown to be available, and the appellant does not argue otherwise.

In sum, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication. 38 C.F.R. § 3.159(c).

NEW AND MATERIAL 

Generally, a claim which has been denied in an unappealed RO decision or an unappealed Board decision may not thereafter be reopened and allowed. 38 U.S.C.A. §§ 7104(b), 7105(c). An exception to this rule is 38 U.S.C.A. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim.

New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

In determining whether evidence is new and material, the credibility of the evidence is generally presumed. Justus v. Principi, 3 Vet. App. 510, 512-513 (1992). Evidence that is merely cumulative of other evidence in the record cannot be new and material even if that evidence had not been previously presented to the Board. Anglin v. West, 203 F.3d 1343, 1347 (2000). In deciding whether new and material evidence has been received the Board looks to the evidence submitted since the last final denial of the claim on any basis. Evans v. Brown, 9 Vet. App. 273, 285 (1996).

The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is low. See Shade v. Shinseki, 24 Vet. App. 110, 117 (2010). Reopening is required when the newly received evidence, combined with VA assistance and considered with the other evidence of record, raises a reasonable possibility of substantiating the claim. Shade, 24 Vet. App. at 117. 

Right Foot Pes Planus 

The Veteran appeals the denial to reopen the claim of entitlement to service connection for right foot pes planus. In a January 2004 rating decision, service connection for bilateral pes planus was denied. The RO found that a bilateral foot condition including pes planus existed prior to service and that there was no evidence of in service aggravation of the condition. The Veteran was notified of the decision in January 2004. He did not appeal that decision. The decision became final. 

In a March 2009 rating decision, the RO found that new and material evidence had not been submitted to reopen the claim for entitlement to service connection for a bilateral foot condition to include pes planus. The Veteran was notified of the decision in March 2009. He submitted a notice of disagreement to the decision in April 2009 and a Statement of the Case was issued in October 2009. The Veteran, however, did not submit a VA Form 9 Substantive Appeal within the applicable time period. The decision became final. 38 U.S.C.A. § 7105.

In April 2010, the RO received the Veteran's request to reopen the claim for entitlement to service connection for a right foot disability. At the time of the last final denial, the record contained service treatment records showing that his pes planus existed prior to service. The records also contained the Veteran's assertions of an in service worsening of his pes planus. Since the last final denial, the Veteran has submitted statements asserting that his right foot disability has worsened and that his pes planus was aggravated by service. In a private October 2010 opinion, it was opined that it was more likely than not that the Veteran experienced aggravation of his bunion condition in service and that the pain of his feet continues to worsen. A June 2015 VA opinion has also been obtained and added to the claims file. The June 2015 VA examiner found that, based on risk factors to include genetic and ethnic influence, while within the realm of medical possibility, the examiner believed that it was less likely than not that the natural course of either foot pes planus and hallux valgus was permanently worsened by his military service. 

On careful review of the record, the Board has determined that new and material evidence to reopen the claim for service connection for right foot pes planus has not been submitted. The Veteran's claim for service connection for pes planus was previously denied on the basis that a bilateral foot condition including pes planus existed prior to service and that there was no evidence of in service aggravation of the condition. Although the Veteran has re-submitted evidence showing that he has pes planus, this fact had already been established. Therefore, such evidence is cumulative. The Veteran has not submitted any evidence showing that his preexisting right foot pes planus was aggravated by service. Rather, the June 2015 VA examiner opined that it was less likely than not that the natural course of either foot pes planus and hallux valgus was permanently worsened by his military service. The Board has also considered the October 2010 private examiner opinion but notes that it does not specifically address pes planus but rather the Veteran's bunion. Because the evidence submitted since the last final decision is cumulative and/or does not relate to an unestablished fact necessary to substantiate the claim for service connection, the Veteran has not submitted new and material evidence on this matter. Thus, the Board concludes that new and material evidence has not been received to reopen the claim for service connection for right foot pes planus. 

Stated differently, service connection for right foot pes planus was denied in the past because the record was devoid of a showing that there was evidence of in service aggravation of the preexisting condition. No material facts have changed.

Regardless of what the RO has done, the Board must address the question of whether new and material evidence to reopen the claim for service connection has been received because the issue goes to the Board's jurisdiction to reach the underlying claim and adjudicate the claim on a de novo basis. See Barnett v. Brown, 83 F.3d 1380, 1383 (Fed. Cir. 1996). In other words, the Board is required to first consider whether new and material evidence is presented before the merits of a claim can be considered. See Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001).

Because appellant has not fulfilled his threshold burden of submitting new and material evidence to reopen his claim, the benefit of the doubt doctrine cannot be applied in this case. Annoni v. Brown, 5 Vet.App. 463, 467 (1993).

Right Wrist 

In a January 2004 rating decision, entitlement to service connection for a right wrist disability was denied. The RO found that the evidence did not show objective medical evidence of a chronic right wrist disability. The Veteran was notified of the decision in January 2004. He did not appeal that decision or submit new and material evidence within the one year appeal period. The decision became final. 38 U.S.C.A. § 7105.

In a March 2009 rating decision, the RO found that new and material evidence had not been submitted to reopen the claim for entitlement to service connection for a right wrist disability. The Veteran was notified of the decision in March 2009. He submitted a notice of disagreement with the decision in April 2009 and a Statement of the Case was issued in October 2009. The Veteran, however, did not submit a VA Form 9 Substantive Appeal within the applicable time period. The decision became final. 38 U.S.C.A. § 7105.

In April 2010, the RO received the Veteran's request to reopen the claim. After reviewing all of the evidence of record available at the time of the March 2009 rating decision and in light of the evidence received since that decision to include objective evidence of ankylosis of the right wrist and minimal degenerative changes of the wrist, the Board finds that the new evidence raises a reasonable possibility of substantiating the appellant's claim of entitlement to service connection for a right wrist disability. Accordingly, the claim is reopened.

SERVICE CONNECTION 

The Veteran appeals the denial of service connection for a right knee disability. He claims that he injured his right knee in service and has had right knee pain since that time. 

Service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131. Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d). Certain chronic diseases, such as arthritis, may be presumed to be service connected if manifested to a degree of 10 percent disabling or more within one year after separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

After weighing the evidence, the Board concludes that the more probative evidence is against the Veteran's claim. To that end, service treatment records show that in September 1987 the Veteran reported right knee pain after a fall from the railroad tracks. In October 1987, right knee trauma was noted. At that time, an assessment of resolving right knee trauma was given. During the September 1992 separation examination, the lower extremities were shown to be normal. At that time, the Veteran denied trick or locked knee. 

While the Veteran is shown to have been treated for right knee pain in service, any in-service symptomatology is shown to have been acute and to have resolved prior to separation. A chronic right knee disability resulting therefrom is not shown by the record. There is also no evidence of compensably disabling arthritis within one year of separation from active duty. Rather, post service complaints of knee problems are not shown in the record until years post service. The Board notes that the passage of many years between discharge from active service and the medical documentation of a claim disability is a factor that weighs against a claim for service connection. See Maxson v. West, 12 Vet. App. 453 (1999), aff'd sub nom. Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000). The disorder is shown years post service but there is no objective evidence attributing any current pathology to service, or the symptoms therein.

The Board has reviewed the service examination reports, VA medical records, the VA examinations and private treatment records of file. These records do not include any opinion linking the Veteran's current right knee disability directly to service. Rather, the September 2013 VA examiner opined that it was less likely as not (less than 50 percent probability) that the Veteran's current right knee disability was incurred in or caused by the claimed in service injury, event or illness. The VA examiner reasoned that the limited flexion of the knee was not explained by the injury or radiographs. 

The Board notes that the Veteran is competent to report symptoms to include knee pain and the circumstances surrounding such. Although lay persons, however, are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), the specific issue in this case, the etiology of his right knee osteoarthritis, bone infarct and strain falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer). The Board finds that the VA opinion is far more probative and persuasive as to the etiology of the Veteran's disability. The VA examiner addressed the Veteran's contentions and based her opinion on a review of the claim folders, complete physical examination and evaluation of the nature and extent of the Veteran's disability. The opinion is well reasoned and supported by the historical record. There are no opinions to the contrary. 

In sum, the most probative evidence of record is against finding that the Veteran's right knee disability is related to service. Hence, entitlement to service connection is denied. The Board has considered the applicability of the benefit-of-the-doubt doctrine; however, because the preponderance of the evidence is against the claim, that doctrine is not applicable. 38 U.S.C.A. § 5107(b).

RATINGS 

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In Fenderson v. West, 12 Vet. App. 119 (1999), the United States Court of Appeals for Veterans Claims (Court) held that evidence to be considered in the appeal concerning an initial assignment of a disability rating was not limited to that reflecting the then current severity of the disorder. The Court also discussed the concept of the 'staging' of ratings, finding that, in cases where an initially assigned disability evaluation has been disagreed with, it was possible for a veteran to be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period. Id. at 126-127; see also Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The basis of disability evaluation is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. In determining the degree of limitation of motion, the provisions of 38 C.F.R. §§ 4.10, 4.40 and 4.45 are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995).

The Veteran appeals the denial of a compensable rating for right foot hallux valgus and a rating higher than 10 percent for left foot pes planus and hallux valgus. His right foot hallux valgus is rated as noncompensable under Diagnostic Code 5280. The Veteran's left foot pes planus and hallux valgus is rated as 10 percent disabling under Diagnostic Codes 5276, 5280. These ratings are specific for the disabilities that are diagnosed. As such, other rating codes are not for consideration. 

Under Diagnostic Code 5276, a 10 percent rating is warranted for moderate pes planus with the weight-bearing line over or medial to the great toe, inward bowing of the tendo Achilles, pain on manipulation and use of the feet, bilateral or unilateral. Severe pes planus manifested by objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, and characteristic callosities, warrants the assignment of a 20 percent rating if unilateral and 30 percent rating if bilateral. Pronounced pes planus manifested by marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo Achilles on manipulation, not improved by orthopedic shoes or appliances warrants the assignment of a 30 percent rating if unilateral and 50 percent rating if bilateral.

Under Diagnostic Code 5280, unilateral hallux valgus warrants a 10 percent evaluation if it is severe and equivalent to amputation of the great toe, or if it has been subject to surgical treatment with resection of the metatarsal head. The 10 percent rating is the maximum evaluation under this Diagnostic Code. 

A private examination conducted in February 2009 revealed the Veteran had hammertoe deformities of the second, third and fourth digits on the left foot. With stance, he had severe pes planus bilaterally and there was severe hallux valgus deformity on the right side with large medial eminence. The area was painful to palpation but there was no erythema or warmth. The deformity was non reducible and there was 45 degrees of dorsiflexion but no soreness about the medial aspect of the right arch. X rays of the right foot showed mild degenerative changes about the midfoot and there was some inferior calcaneal spurring.

The October 2011 VA examination disclosed the feet did not reveal any signs of abnormal weight bearing or breakdown, callosities or any unusual shoe wear pattern. It was noted that the Veteran did not require any assistive device for ambulation. His posture and gait were within normal limits. Examination of the feet revealed moderate tenderness but there was no painful motion, edema, disturbed circulation, weakness, atrophy of the musculature heat, redness and/or instability. There was active motion in the metatarsophalangeal joint of the right and left great toe. The feet showed a moderate degree of valgus present which could be corrected by manipulation and forefoot/midfoot malalignment of a slight degree which could be corrected by manipulation. There was no deformity, pes cavus, hammertoes, hallux rigidus and/or Morton's metatarsalgia present on examination. Hallux valgus of the left and right foot was present with a slight degree of angulation with no resection of the metatarsal head present. X rays of the left foot showed degenerative changes, mild loss of the normal plantar arch with weight-bearing and small density on the skin of the distal second toe that may be extrinsic debris. 

The June 2015 VA examination disclosed the Veteran's pes planus caused swelling, pain accentuated on use and characteristic callouses but there was no pain on manipulation of the feet. There was objective evidence of marked deformity of both feet (pronation, abduction etc.) but no evidence of marked pronation of one or both feet. The right foot hallux valgus symptoms were described as mild to moderate. There was pain, weakness, fatigability and incoordination that significantly limited functional ability during flare-ups or when the foot was used repeatedly over a period of time.

Initially, the Board finds, resolving reasonable doubt, that an initial 10 percent rating for right foot hallux valgus is warranted. To that end, the evidence shows there are mild degenerative changes about the midfoot and there was some inferior calcaneal spurring of the right foot. Furthermore, VA examinations, outpatient treatment records and lay statements of record throughout this appeal show continued complaints of bilateral foot pain and objective evidence of foot pain. The Board observes that painful motion is entitled to at least the minimum compensable rating for the joint under 38 C.F.R. § 4.59. As there are examination findings disclosing degenerative arthritis of the feet and there is objective evidence of painful motion, the criteria of 38 C.F.R. § 4.59 are met. Based upon credible evidence of pain and the provisions of 38 C.F.R. § 4.59, an initial 10 percent evaluation is granted for right foot hallux valgus. 

The Board, however, finds that an initial rating higher than 10 percent for right foot hallux valgus is not warranted. In this regard, the currently assigned 10 percent rating is the maximum evaluation available under DC 5280. The Board has reviewed Diagnostic Code 5278 claw foot (pes cavus), Diagnostic Code 5283 (malunion of the tarsal or metatarsal bones) and Diagnostic Code 5284, but find they are not for consideration, as there is no evidence that the Veteran has any of these disabilities. The Board further notes that service connection for right foot pes planus is separately addressed in this decision. The Board has considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4, whether or not they have been raised by the appellant or his representative, as required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The Board has found no section that provides a basis upon which to assign a rating higher 10 percent for the right foot hallux disability. Accordingly, a rating of 10 percent, but no higher, is granted for right foot hallux valgus. 

The Board also finds against a rating higher than 10 percent for left foot pes planus and hallux valgus. To that end, as noted, 10 percent is maximum evaluation assigned under Diagnostic Code 5280. To warrant a rating higher than 10 percent under Diagnostic Code 5276 the evidence must show severe pes planus manifested by objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, and characteristic callosities. While the VA and private examinations disclose that the left foot pes planus is manifested by objective evidence of marked deformity, indication of swelling on use and characteristic callosities, there was no showing of pain on manipulation as required for the next higher evaluation under Diagnostic Code 5276. A review of the record discloses that the Veteran's left foot disability more closely approximates moderate disability, not severe. The Board has considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4 but has found no section that provides a basis upon which to assign a rating higher than 10 percent for left foot pes planus and hallux valgus. Separate compensable ratings are not in order as that would result in evaluating the same impairment under two codes in violation of 38 C.F.R. § 4.14, concerning pyramiding.

The Board acknowledges the Veteran's assertions that his disability is more severe than evaluated to include his reports of pain and swelling. The Veteran is competent to report his symptoms and has presented credible testimony. Layno v. Brown, 6 Vet. App. 465, 469 (1994). The Board has also considered the lay statements of record which discuss the Veteran's functional and mobility limitations caused by his disability to include limitations with ambulation and standing. Except where otherwise noted, neither the lay or medical evidence reflects that the requirements for a higher rating have been met. The more probative evidence is that prepared by neutral skilled professionals and such evidence demonstrates that the currently assigned ratings are warranted and no more.

In reaching the above conclusions, the Board has considered the requirements of 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995). To the extent that the Veteran reports foot pain, the Board notes that the current ratings contemplate periarticular pathology productive of painful motion. 38 C.F.R. § 4.59. 

The discussion above reflects that the symptoms of the Veteran's disability are contemplated by the applicable rating criteria. The effects of his disability, including painful motion, have been fully considered and are contemplated in the rating schedule. Thus, consideration of whether his disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required and referral for an extra-schedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008).

An inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been considered. The evidence shows some occupational impairment due to the Veteran's bilateral foot disability. The objective and subjective evidence, however, does not demonstrate that the Veteran is unemployable as a result of his foot disability. Therefore, any inferred TDIU claim is inapplicable in this case.

Finally, under Johnson v. McDonald, 762 F.3d 1362 (Fed.Cir. 2014), a Veteran may be awarded an extrascheduler rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. In this case, however, even after applying the doctrine of reasonable doubt, there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extrascheduler consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 


ORDER

The application to reopen the claim for entitlement to service connection for right foot pes planus is denied. 

The application to reopen the claim for entitlement to service connection for a right wrist disability is granted. The appeal is allowed to this extent.

Entitlement to service connection for a right knee disability is denied. 

Entitlement to an initial 10 percent rating, but no higher, for right foot hallux valgus is granted, subject to the law and regulations governing the award of monetary benefits. 

Entitlement to an initial rating higher than 10 percent for left foot pes planus and hallux valgus is denied. 


REMAND

Having reopened the claim of entitlement to service connection for a right wrist disability, the Board finds that a remand is warranted for additional due process considerations. Bernard v. Brown, 4 Vet. App. 384, 392-94 (1993). The Court has held that before the Board may address a matter that has not been addressed by the RO, it must consider whether the claimant has been given adequate notice of the need to submit evidence or argument on that question and an opportunity to submit such evidence and argument and to address that question at a hearing, and, if not, whether the claimant has been prejudiced thereby. In this case, the RO has not considered the claim for service connection for a right wrist disability on the merits. As such, a remand is warranted so that they can do so without prejudice to the Veteran.

Accordingly, the case is REMANDED for the following action:

1. Send the Veteran a Veterans Claims Assistance Act of 2000 (VCAA) notice letter regarding his claim for entitlement to service connection for a right wrist disability.

2. Thereafter, adjudicate on the merits the claim for entitlement to service connection for a right wrist disability. If it is determined that an examination and opinion is indicated, such examination should be undertaken, in accordance with applicable procedures.

3. After undertaking the development above, readjudicate the Veteran's claim. If the benefit sought on appeal remains denied, provide a supplemental statement of the case to the Veteran and his representative, and an appropriate period of time in which to respond. Then, return the appeal to the Board for appellate review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
MICHAEL D. LYON
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs